Okay, Mr. Castor, whenever you're ready. Thank you and good morning members of the panel. My co-counsel here is Melanie Fay. I'm Bruce Castor from Philadelphia for the appellants. There's been extensive briefing in this case. The district court in Maryland dismissed the appellants petition below on standing grounds and not only has the issue been briefed by both parties, but the Brennan Center has an amicus brief. And we're seeking remand to the district court for further proceedings on the issue of standing and perhaps on the merits of the petition. The basic factual recitations in the petition are that appellant organizations and some individuals who are voters in Maryland did a statistical or a data analysis of the 2022 federal election and found the irregularities that it thought, collective appellants thought, ought to be addressed by the appellees, the Maryland State Board of Elections. And while I know the court has read all the briefs, I want to approach this from a slightly different angle than I approached it in the original brief, from a constitutional angle. Article I, Section 4 of the U.S. Constitution creates the peculiar situation where each individual of the several states decides a time, place, and manner for federal elections. It primarily relates to the House of Representatives, but over time it has come by amendment to include the Senate as well. And if in 1787 or 1789, Congress from that point forward chose to leave that alone, did nothing at all, each of the individual states would have developed their own mechanism for deciding how federal elections every two years or if there Article III standing. And the question seems to pop out here is there seem to be some generalized information that's given or generalized possibilities, but is that enough Article III standing? Well, Judge Wayne, that was the reason I wanted to approach it from the opposite way that I did in the brief, because the situation that has arisen is, I suggest there was no possibility that Congress could have anticipated that when it invoked the second clause of Article I, Section 4, that Congress may from time to time regulate elections where the first part of the clause says that the states shall have the authority to determine the time, place, and jurisdiction to the states to supervise federal elections. The next clause, it takes it away by saying, but we can change that if we want, keeping Congress as the supreme architect, the supreme decision maker on how elections are to occur. I'm not sure you're answering Judge Wayne's question because he wanted to know why he wanted you to address the standing question and I have, I want you to address that too because Article III's limitations on judicial authority are very meaningful and standing has within it a requirement of particularization. And I don't understand how your claim of injury is in any sense particularized because it seemed to me that any voter could come in with a conclusory assertion of vote dilution and without more satisfy the Article III requirement. And so this is where I'm I'm hung up because I don't understand exactly how your vote was diluted other than in some highly general sense that that everybody's vote is theoretically diluted. Diluted. That's a preliminary question that I need to have answered to my satisfaction before we even get into the merits and the fact that the notice was sent to all the wrong people. But the standing question is fundamental, I think, in these vote dilution claims and I would just like how you separate yourself from members of the general public. Well, on the issue of the particularized standing, your honor said could come in with anything unsubstantiated. Our clients argued that they could come in with things that were substantiated and could demonstrate that in their particular instances they were unable to feel as though their vote was properly counted. So it wasn't particularized to all voters, it was particularized that if you believe the following things that we allege, our members and particularly Ms. Sullivan and Mr. Morseberger, our vote was not properly counted or canvassed. Well, I'm not sure that's in the record at all. I thought the only statement on to that is whether the ballot was blank and there's no evidence that the plaintiffs in any way cast a blank ballot. It's only that there's a fear because of the statistics you have that they don't know or they're worried about casting a blank ballot. That's on your third count, which is there's a standing question there too probably. But you allege with respect to count the first count and the third count basically that vote your vote was diluted. That's the injury that you claim and it seems to me that that is a generalized injury unless you have some comparative is diluted with respect to what. But if it's diluted because of a voting irregularities, that probably needs to be addressed by the commission and by the legislature. Well, the trial court applied the factual subject matter jurisdiction test and not a facial subject matter. So the trial court did not permit or did not credit affidavits and permit the introduction of specific evidence on that point. So we didn't get an opportunity. What is your allegation of particularized injury with respect to what you've alleged? You've alleged irregularities in the what the 2022 and the 2020 elections? 2022. 2022 elections. And what's the particularized injury that the plaintiffs are alleging? That they cannot be confident that their votes were properly counted and were properly credited in the 2022 election. Well, if somebody's not confident that it was counted, it's pretty speculative, isn't it? Well, they wanted to present evidence on why that assertion was reasonable but didn't get an opportunity. And if it wasn't counted or if it's specific evidence that they weren't counted, but you're not even making the claim it wasn't counted. You're, the only claim you make in that direction, I believe, is that there was some blank ballots cast during the election and you don't know whether yours was blank. The claim is beyond that. It's not just that our clients were in a position where they could not believe, they could not feel confident that their vote counted and there was no enforcement mechanism to check it. The votes were cast and counted. The question is, what are you saying that their vote wasn't counted? What fact are you relying on that your plaintiff's vote was not counted? It's just a boil, the problem I think we're all having, we're just, it's just a boilerplate conclusion that you've come in with and the same boilerplate conclusion would be that somebody, any person off the street or anybody who ever voted in an election could make the same claim. Say I voted, my vote was diluted, but I mean the whole claim of injury, there has to be some distinctiveness to it, some uniqueness to it, something that differentiates you from the hundreds of thousands, millions of people who vote in an election, some evidence exactly how your vote was diluted, exactly which, how was it diluted? I mean, what reasonable efforts were not undertaken and how did they, how did they affect you? There are just so many questions to be asked about this standing point and it all gets down, I mean most complaints are just vastly more particularized in terms of injury than this one. That's the problem. Well, the remedy that we were seeking is an opportunity to remand and amend the complaint. That's not the standard, just to set it straight, we have to look at your complaint and determine that you have sufficiently alleged a claim here, the Iqbal-Tromley standard tells us that. We apply the rules in terms of how do you do it in the context of a vote dilution or a blank or whatever, you have to be particularized and when you look at your complaint, I mean, basically if you look at it, that's not even an allegation that anybody even voted, actually voted somewhere, some injury actually happened to someone, or that when you're dealing with public information, you just simply say, well, we were, somebody asked, and that's not enough. Complaints get dismissed all the time, but particularly in these cases where you don't have that particular, particular language, unless you can point to it, this complaint, and I have it here before me, where it is particularized in making the allegations that are necessary under our existing law, because there are cases replete telling you, you can't do this. The thrust of my argument was that these people conducted this examination and did not have any place to go to complain to, and when they went to the executive. I'm not cutting you off, but I want to make sure you understand, I'm not challenging your argument. What I'm saying to you is it has to be in this complaint. It cannot be stand in front of us and tell us what your argument would be or what it could have been for the first time, or it has to be here because of the type of appeal this case is coming to us on. There's a motion, there's a dismissal for lack of standing. So then we turn to this complaint and say, okay, where are the allegations? So you have to, it's not an argument, it is a directing our attention to what's in this complaint that gives you that particularized pleading that allows you to move forward. I have no further argument to make on that point. The complaint that I wanted to raise to the court is there was no executive authority to which to take the complaint. Yeah, but see, your complaint by its nature is a complaint about a system. You surveyed the system and assessed it and found defects in the system, voting system, that adversely affected voting and the counting of voting and that type of thing. But when you bring a lawsuit, you say you didn't have any place to go. The obvious place to go is the legislature or the election commission, depending on their authority. I don't know in Maryland whether they have the authority to address these or whether they should be done by the legislature, but those are systemic claims. And the question is, you say you would like to have a right to amend, but how were, let's start with the two individuals that you have here as part of the association, how were they affected? And the only thing I saw is that one of them had a fear that the ballot that she actually cast may have been blank, but she doesn't know. She just alleges that because there were x thousands of blank ballots cast, she doesn't know where the hers was. But that's the most you allege. The other thing you allege is that because of these defects, some people may have voted that shouldn't have and your vote was diluted. Isn't that it? Yes, and the lack of enforcement mechanism within Maryland. I know, but that doesn't go to the injury. The injury is how your persons were injured. That's what we start out with case or controversy under Article 3, as you to have the parties coming to court have to be injured and have an injury that we can redress. All right. Thank you, sir. Mr. Coburn. Thank you, your honor. May it please the court that as you've noted, the appellant's complaint essentially does not differentiate Katherine Sullivan because Katherine Sullivan is the voter that the complaint names does not differentiate Ms. Sullivan from any other registered voter in Maryland. It essentially alleges that there are provisions of the National Voter Registration Act and the Help America Vote Act that they allege were violated and that a federal court should therefore enforce those provisions as appellants fit. Does the Maryland Board of Elections have the authority to address their complaints about the Yes. Did they file a complaint before the board? No, they did not. The Help America Vote Act requires that states that accepted federal funding to update their election system have an administrative complaint procedure for filing these types of complaints. The procedures for doing so are in the Code of Maryland Regulations. I mean, they have, they have, they've demonstrated, I think, you know, they don't want to poopoo it. They've demonstrated legitimate concerns about the voting system. The real question is they've addressed the system as opposed to individuals who are bringing suit. And if you're addressing the system as it applies to all Marylanders, they should be going to some place in the executive side of the, of things where, or in the legislative side where you can either change the law or you can execute the law differently. And it seems to me those are the obvious things they can do. And if they haven't filed a complaint, maybe you should go over and have them, invite them to send in your complaint, their complaint. My duties as an Assistant Attorney General in Maryland only allow me to help so much in a case like this. Helping the whole system. Of course. But ultimately, Your Honor, is absolutely correct. What we have here is a generalized complaint about the system that does not particularize to either the organization or the registered voter named. There are complaints, again, under the National Voter Registration Act that essentially say there are inaccurate voter registration records and that leads to dilution. And I just want to take a moment to point out for the court that even there, voter registration records do not lead to vote dilution. Vote dilution could be claimed as an injury in some way, like it is... Well, if you compare it to somebody else, I mean, like a race or a district, this district or that district. Absolutely. Yeah. If it's compared to a district. This is a statewide challenge. Exactly. And that's why a voter registration record won't get you there. Similarly, under the Help America Vote Act, which contains no private cause of action, it is a standards act, essentially, for election officials to conduct elections. The complaint about blank ballots is premised on two hypothetical conditions. The first being that ballot scanners were not configured properly to report undervotes or blank ballots. And two, that Ms. Sullivan herself unknowingly cast a blank ballot when there must be some personal responsibility. Ms. Sullivan... She didn't say she unknowingly cast it. She said she fears. She fears. She had no basis to fear it. She just said she didn't know. But there's no way she's going to ever know. Which is fair. However, what she doesn't particularize is how she voted. The notification requirement under the Help America Vote Act first applies to over-voting, to filling in too many bubbles. Does it even state whether she did vote? Well, it does not. I think the most generous... She even voted in the election. The most generous and liberal reading you can give to, I think it's paragraph 84 in the complaint, is that a ballot was cast. But no, the complaint never actually alleges that Ms. Sullivan voted in any Maryland election. And just briefly, as to Mr. Morseberger, who's the other registered voter, argued in the briefs, Mr. Morseberger is not mentioned in his complaint. Mr. Morseberger filed an affidavit attached to a request for a temporary injunction, but never actually affirmed that he was a member of the organization. The plaintiffs here are not individuals. The plaintiffs are only Maryland election integrity and United Southern Americans. We therefore need an individual member of one of those organizations to have standing in order for those organizations to have standing. We don't have that here. Unless the court has any other questions about any of the other matters in this case, I'll submit. All right, I'm going to ask my colleagues if they have further questions. We're fine, thank you. Mr. Castor? All right, thank you. We will adjourn court and we will come down and re-counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court. Thank you.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, James Andrew Wynn